# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## AT LEXINGTON

**CRIMINAL NO. 08-CR-226-JMH-CJS**
**CIVIL NO. 10-CV-7108-JMH-CJS**

**UNITED STATES OF AMERICA**                                        **PLAINTIFF**

**v.**                            <u>**REPORT AND RECOMMENDATION**</u>

**LUIS E. LOPEZ**                                                   **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \*

On January 19, 2010, Defendant Luis E. Lopez filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody. (R. 236). In response, the Government filed a Motion to Dismiss (R. 242), to which Defendant has responded (R. 252).[1] Pursuant to local practice, this matter has been referred to the undersigned for consideration and preparation of a Report and Recommendation. 28 U.S.C. § 636(b). Having all relevant documents before the Court, the matter is ripe for consideration. For the reasons set forth below, it is recommended that the District Court **grant** the United States' Motion to Dismiss and **deny** Defendant's Motion to Vacate.

## I.    BACKGROUND

On January 22, 2009, a superseding indictment was returned against Defendant and several others on charges of: (1) conspiracy to knowingly and intentionally distribute five or more kilograms of cocaine; (2) conspiracy to distribute one hundred kilograms of marijuana; and (3) possession with

---

[1]In Defendant's April 22, 2010, Response to the United States' Motion to Dismiss (R. 252), he asks that the Government's responsive filing be dismissed as untimely, arguing that the United States was ordered to answer or otherwise respond to Defendant's motion within forty days of the Court's January 25, 2010, Order; i.e., by March 6, 2010. (R. 237). However, prior to that deadline, the Government moved for an extension until March 19, 2010, to so file. (R. 239). Defendant objected to the Government's requested extension (R. 243), but that extension was granted on April 14, 2010. (R. 251). Thus, Defendant's argument is without merit, as the Government was granted an extension, and its motion was timely filed.

intent to distribute five hundred grams or more of cocaine. (R. 50). On April 8, 2009, Defendant pled guilty to count one of the indictment (*see* R. 125), and the remaining two counts were later dismissed at his August 10, 2009, sentencing (*see* R. 241, at 15).

During the April 8, 2009, rearraignment, District Judge Hood conducted a Rule 11 colloquy to verify that Defendant fully understood his plea agreement and that it was voluntary. Defendant was specifically asked whether he was satisfied with his counsel, and he responded that he was. (R. 240, at 4). The Court also verified that Defendant fully understood the terms of the agreement and confirmed Defendant's understanding that by signing the plea agreement, he would be acknowledging certain facts as true. (*Id*. at 5, 7). The Court emphasized to Defendant that, as part of his plea agreement, he was waiving his right to appeal or collaterally attack his guilty plea, conviction, or sentence. (*Id*. at 8). The Court further elicited from and confirmed with Defendant that he was entering this plea voluntarily. (*Id*.). After the Court was satisfied that Defendant thoroughly understood the plea agreement and the rights he was waiving, the Judge concluded that Defendant was "fully competent and capable of entering an informed plea." (*Id*. at 16). He further found "the plea of guilty [to be] a knowing and voluntary plea supported by an independent basis and fact containing each of the essential elements of the offense," and accepted the plea. (*Id*.).

Following Defendant's entry of his guilty plea, a presentence investigation was conducted and a presentence report prepared for purposes of Defendant's sentencing. Defendant's citizenship status was one of the many items included in that investigation. While preparing for sentencing, Defendant and his court-appointed defense counsel learned that their presumption of Defendant's status as a U.S. citizen likely was not, in fact, correct. This situation surrounding Defendant's citizenship status lies at the heart of Defendant's challenges to his conviction, plea, and sentence.

Defendant was born in Mexico, but has resided in Kentucky since the age of three, being raised here by his mother and stepfather. (*See* R. 172, Sentencing Memorandum, at 5). In his responsive filing, Defendant states that in November 2008, just prior to the filing of the federal complaint giving rise to this criminal proceeding and while Defendant was then in state custody, his mother and sister consulted immigration attorney Wael M. Ahmad. (R. 252, at 4). Defendant further states that "Mr. Ahmad advised Defendant's mother and sister not to worry, that Defendant would not be deported because Defendant derived U.S. citizenship under the Child Citizenship Act." (*Id.*). This statement by Defendant, and the resulting inferences as to Defendant's state of mind, are consistent with the statements of his defense counsel, who was appointed by the Court during Defendant's initial appearance on February 10, 2009. (R. 77). Counsel states that Defendant informed him on numerous occasions that he was a U.S. citizen and that he had even consulted with an immigration attorney. (R. 242-1, at 1).

Letters from defense counsel detail the progression of both counsel's and Defendant's understanding of his citizenship status. These letters reflect that it was not until after Defendant had agreed to enter a guilty plea that any issue regarding Defendant's citizenship status was first discovered. Counsel first referenced there being a need for clarification of Defendant's citizenship status in a letter dated June 26, 2009. (*See* R. 236-2, at 9). In this letter, defense counsel informed Defendant that he had spoken with Mr. Wael Ahmad, Defendant's immigration attorney regarding the situation, and specifically requested that Defendant have his mother contact defense counsel to clarify the matter prior to sentencing. (*Id.*). The letter further details defense counsel's understanding that Defendant's status as a U.S. citizen depended upon whether his mother, not his stepfather, was a citizen when the law took effect. (*Id.*). Defense counsel further stated that if only Defendant's stepfather was a U.S. citizen, then he "may have an immigration problem that will likely

affect [his] citizenship status and could lead to [him] being deported." (*Id*.). Defense counsel recommended that Defendant follow up with his immigration attorney.

In the next communication, dated July 2, 2009, counsel confirmed that according to Defendant's immigration attorney, Defendant had an immigration problem. (*Id*. at 10). Counsel recognized that both he and Defendant had "labored under the impression that [Defendant was] a US citizen," and conveyed that Defendant's status as a resident alien complicated his situation. (*Id*.). Counsel then strongly recommended that Defendant consult with an immigration attorney to determine whether there were any alternatives to outright deportation. (*Id*.).

Counsel's next letter is dated July 13, 2009, and it discusses two issues. First, defense counsel addressed Defendant's consideration of withdrawing his guilty plea, and he recommended against this course of action. (*Id*. at 11). Defense counsel recognized that Judge Hood would likely not allow Defendant to withdraw his plea, and that even if he did, it was likely that he would be found guilty in light of the fact that his codefendants would probably testify against him and the Government would likely attempt to convict him of distributing a larger quantity of drugs. (*Id*.). Counsel further explained to Defendant the sentencing consequences of being found guilty, such as the loss of an opportunity to receive the benefit of a 5K motion to decrease his sentence for cooperating with the Government and the loss of the three-point sentencing reduction for pleading guilty. (*Id*.).

Counsel then turned to Defendant's immigration situation. (*Id*. at 12). Counsel again acknowledged that both he and Defendant had only recently learned that Defendant was not a U.S. citizen and that Defendant had previously consulted with an immigration attorney. (*Id*.). Counsel then stated that Defendant had "operated under the misunderstanding that [his] step-father's status

would allow [him] to be deemed a U.S. Citizen," and recommended that he contact an immigration attorney to discuss his options. (*Id.*).

Defendant ultimately decided to proceed to sentencing, and on August 10, 2009, Defendant was sentenced to forty-three months of imprisonment, with five years of supervised release to follow. In the course of that sentencing, the Court confirmed Defendant had received the presentence report. Nothing was said by Defendant at sentencing with respect to his citizenship status as reflected therein, by way either of formal objection to the presentence report or any comments from Defendant at his sentencing proceeding.

In his plea agreement, Defendant waived his right to appeal (*see* R. 120, at ¶ 7), and no direct appeal was filed with the Sixth Circuit Court of Appeals. On January 19, 2010, Defendant filed the pending Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (R. 236) challenging, among other issues, that his criminal defense counsel was inadequate in his handling of Defendant's citizenship status.

## II.     ALLEGED GROUNDS FOR RELIEF

Defendant alleges several grounds for relief in his § 2255 motion, as well as additional grounds in his response to the Government's Motion to Dismiss.[2]  Upon review of same, those grounds can be delineated as challenges that:  (1) evidence against him was obtained in violation of his Fourth Amendment right against unreasonable searches and seizures (R. 236, at 7); (2) his

---

[2] Defendant's response to the Government's Motion to Dismiss raises additional grounds in support of his Motion to Vacate not presented in his initial motion.  These new claims were not presented within one year and therefore are likely barred, *see Mayle v. Felix*, 545 U.S. 644, 657 (2005) (noting that only those claims presented that "arise from the same core facts as the timely filed claims" will relate back to the date of the original filing) , nor has Defendant actually moved to amend or supplement his Motion to Vacate.  The Government did not reply to Defendant's response to its Motion to Dismiss or otherwise address the merits of these new grounds Defendant adds.  Regardless, in the interest of judicial economy in bringing this matter to a close, analysis of these claims is included within this Report and Recommendation.

conviction was obtained in violation of his Fifth Amendment right against self-incrimination (*Id.* at 8); (3) his conviction was based upon the prosecution's use of false or misleading evidence (*Id.* at 9); (4) the prosecution failed to disclose favorable evidence in violation of *Brady v. Maryland* (*Id.*); (5) his Fourteenth Amendment rights generally were violated (*Id.*); (6) his plea was involuntary because he did not understand the charge nor the deportation consequences of pleading guilty; (*Id.* at 5); and (7) his Sixth Amendment right to effective assistance of counsel was violated. (*Id.* at 4).

Defendant's allegations of ineffective assistance of counsel can be divided into two categories: general pretrial failures and failures related to counsel's handling of Defendant's citizenship status. The first category of claims, defense counsel's alleged pretrial failures, include counsel's failure to: (1) move to suppress certain evidence (R. 236-2, at 2); (2) file a Rule 48 motion to dismiss due to unnecessary delay between the time of the arrest and his initial appearance (R. 252, at 18); (3) file beneficial pretrial motions (*Id.* at 19); (4) properly advise Defendant of the relevant facts and law (*Id.*); (5) properly advise Defendant about continuing to cooperate with the police and not to do so (*Id.* at 20); and (6) negotiate a better plea agreement. (*Id.* at 14-18). Defendant argues that counsel could have obtained a better plea deal by arguing that prosecutor misconduct, including withholding *Brady* material, prejudiced Defendant's plea bargaining; that the agents aggressively encouraged him, resulting in entrapment; that sentencing entrapment occurred; and that he should get less time because he was a low-level conspirator, and thus was punished for acquitted conduct. (*Id.* at 14-15).

The second category of claims, defense counsel's alleged failures in handling Defendant's citizenship status, include counsel's: (1) failure to advise that pleading guilty would lead to certain deportation (R. 236-1, at 2); (2) failure to verify Defendant's immigration status (R. 236, at 4); (3) misadvice regarding Defendant withdrawing his guilty plea (R. 252, at 13); (4) misadvice that he

would be eligible for the Residential Drug Abuse Treatment Program (R. 236, at 4); and (5) counsel's failure to argue for a downward departure both to obtain a better plea agreement and to get a lesser sentence (R. 252, at 14). Specifically, Defendant argues that counsel should have argued for a lesser sentence on the basis that he: (a) is a deportable alien and an alien faces more severe restrictions in prison than a nonalien; (b) has assimilated in the American culture; and (c) was sentenced in a jurisdiction without a fast-track policy. (*Id*. at 16-18).

The Government responded to the challenges raised in Defendant's Motion to Vacate by filing the aforementioned Motion to Dismiss, arguing that Defendant waived his right to collaterally attack his conviction in his plea agreement. (R. 242, at 1). The Government further argued that Defendant's ineffective assistance of counsel claims, to the extent they could be interpreted as attacking the validity of the waiver, fail on the merits, and Defendant's § 2255 motion therefore should be dismissed.

## III.    ANALYSIS

### A.    The Effect of the Waiver in the Plea Agreement

Defendant's § 2255 motion is a collateral attack, and Defendant expressly waived his right to collaterally attack his guilty plea, conviction, and sentence in the plea agreement he signed. (R. 120, at ¶ 7) ("The Defendant waives the right to appeal and the right to attack collaterally the guilty plea, conviction, and sentence, including any order of restitution."). Defendant further acknowledged that the agreement, and thus the waiver contained therein, was voluntary. (*Id*. at ¶ 12) ("The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, . . . , and that the Defendant's entry into this Agreement is voluntary."). The Sixth Circuit has specifically held that a defendant's informed and voluntary waiver of the right to collateral review is enforceable and forecloses the right to bring a § 2255 petition. *Davila v. United*

*States*, 258 F.3d 448, 451 (6th Cir. 2001); *Watson v. United States,* 165 F.3d 486, 489 (6th Cir. 1999). A valid waiver of the right to collateral attack also precludes claims of ineffective assistance of counsel in violation of the Sixth Amendment, *see Davila,* 258 F.3d at 451, because a defendant may waive any right in a plea agreement, including a constitutional right, provided that the waiver is knowing and voluntary. *United States v. Fleming*, 239 F.3d 761, 763 (6th Cir. 2001).

An exception to this general rule exists if the collateral attack concerns the validity of the waiver or plea agreement itself. *See Davila,* 258 F.3d at 451; *see also In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007) (recognizing that "it would be entirely circular for the government to argue that the defendant has waived his right to an appeal or a collateral attack when the substance of his claim challenges the very validity of the waiver itself"). It is well-settled that a defendant can attack the validity of the plea by challenging its voluntariness or intelligence. *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

An attack on the voluntariness or intelligence of the plea requires the defendant to demonstrate that counsel's advice to plead guilty fell below the requisite range of competence. *Id.* Thus, defendant is bound by the plea unless he can allege and prove "serious derelictions" by counsel such that they rendered the plea unknowing or unintelligent. *McMann v. Richardson*, 397 U.S. 759, 774 (1970). In those situations, the court must analyze the merits of the claims to determine whether the plea agreement, and the waiver contained within, were knowing and voluntary. *See United States v. Earle*, No. 6:05-95-DCR, 2007 WL 4570892, at * 6, n.4 (E.D. Ky. Dec. 27, 2007) (recognizing that a defendant's challenge to the validity of the guilty plea required an analysis of the merits of those claims). The Court will begin by analyzing the validity of the plea and waiver, and then address Defendant's claims that attack them.

### B.     Defendant's Plea Agreement was Knowing and Voluntary

The circumstances surrounding the plea agreement demonstrate that Defendant's plea agreement, including its waiver provision, was both knowing and voluntary. During the district court's Rule 11 colloquy, the Assistant United States Attorney read and explained the terms of the plea agreement in open court, and he specifically addressed the waiver:

> **AUSA:** Defendant waives the right to appeal and the right to attack collaterally the guilty plea, conviction and sentence. By signing the plea agreement as well as the sealed supplement, the defendant indicates he understands all the terms of the plea agreement and that his plea is free and voluntary, sir.
> ...
>
> **THE COURT**: Mr. Lopez, is that your plea agreement?
>
> **THE DEFENDANT**: Yes, sir.

(R. 240, at 8).

The Court again confirmed that Defendant understood he was waiving his right to appeal:

> **THE COURT**: Once I impose a sentence, you would normally have the right to appeal that sentence to the United States Court of Appeals for the Sixth Circuit. But in your plea agreement, you expressly waive that right. . . . Finally, if the sentence is more severe than you expected, you will still be bound by your plea and will have no right to withdraw it. Do you understand that, sir?
>
> **THE DEFENDANT**: Yes, sir.

(*Id*. at 10).

In light of Defendant's statements on the record, the Court concluded:

> **THE COURT**: It is the finding of the court . . . that the defendant is fully competent and capable of entering an informed plea, that the defendant is aware of the nature of the charges and the consequences of the plea, that the plea of guilty is a knowing and voluntary plea supported by an independent basis and fact containing each of the essential elements of the offense.

(*Id*. at 16).

As shown by the Rule 11 colloquy, the Court thoroughly verified Defendant's understanding of not only the terms of the agreement but also the rights that he would be waiving, including the

right to collateral attack. Defendant stated his understanding of the waiver and the acceptance of the plea under oath, and "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). Moreover, the Rule 11 colloquy is only meaningful "if the court can rely on the defendant's statements made under oath . . . ." *United States v. Eversole*, No. 6:05-34-DCR, 2010 WL 420067, at *10 (E.D. Ky. Feb. 1, 2010) (citing *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003)). Therefore, Defendant's plea was knowing and voluntary, and thus he waived his right to collaterally attack his conviction as a term of his plea agreement.

### C.     Defendant's Claims Not Attacking His Plea or the Waiver

Most of Defendant's claims, noted as grounds one through five above, as well as Defendant's ineffective assistance of counsel claims regarding general pretrial failures, do not attack the validity of the waiver or the guilty plea and are barred by the waiver. Specifically, Defendant claims his Fourth Amendment right to be free from unreasonable searches and seizures was violated when law enforcement searched his vehicle, in that he disputes giving consent to do so. He also claims that his Fifth Amendment right against self-incrimination was violated, in that his *Miranda* warning was inadequate and law enforcement failed to honor his invocation of those rights. He maintains that his conviction was further based on the Government's fraudulent use of false and misleading evidence in the form of an altered investigation memorandum of law enforcement, as well as the Government's failure to disclose evidence that, although unidentified by Defendant, he asserts was favorable to him. He also asserts unspecified claims that his Fourteenth Amendment right of equal protection of the laws was violated generally. Lastly, Defendant broadly claims that counsel rendered ineffective assistance by failing to file beneficial pretrial and evidentiary motions, properly

advise him generally as to all law and facts, advise him to stop cooperating with the police, and negotiate a better plea agreement based on prosecutorial and other official misconduct.

Essentially, each of these claims is a challenge to the evidence underlying his conviction or an error that occurred prior to the entry of the plea. These issues could have been litigated before Defendant entered a guilty plea, but he waived the right to raise them by pleading guilty and by waiving his right to appeal or collaterally attack his conviction in the plea agreement. *See Tollett*, 411 U.S. at 267 (noting that "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty . . . , he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea"). Therefore, because the waiver in the plea agreement was knowing and voluntary, these claims are subject to the waiver and barred.

**D.      Defendant's Remaining Claims Involving his Citizenship Status**

Although Defendant's plea agreement contained a waiver of his right to collaterally attack, and thus the express terms of his plea agreement bar his § 2255 motion, Defendant makes several allegations, most of which claim ineffective assistance of counsel, that can be interpreted as attacking the validity of the plea and waiver because they involve Defendant's citizenship status. In sum, Defendant claims that his counsel's ineffective handling of the deportation issue and his citizenship status negate the voluntariness of his guilty plea and conviction. He further contends that his plea was involuntary because he did not understand the nature of the charge or the deportation consequences of pleading guilty. Therefore, the Court will analyze the merits of these claims to determine whether they affect the validity of the waiver and the plea.

**1.      Defendant's Ineffective Assistance of Counsel Claims**

Defendant's ineffective assistance of counsel claims at issue are those involving his citizenship status, including: (1) failing to inform him that mandatory deportation was a consequence to his guilty plea; (2) failing to verify his citizenship status as he allegedly requested; (3) advising him not to withdraw his guilty plea; (4) misadvising him as to his eligibility for participation in the Residential Drug Abuse Treatment Program during his incarceration; and (5) failing to argue for a downward departure to obtain a better plea agreement and to get a lesser sentence.

A defendant is entitled to effective assistance of competent counsel before deciding to plead guilty. *Strickland v. Washington,* 466 U.S. 668, 686 (1984). The Supreme Court has established a two-prong test for ineffective assistance of counsel claims, which requires proof of both attorney error and prejudice resulting from that error. *Id.* at 687. The first prong requires a showing that counsel was constitutionally deficient, and there is a strong presumption that counsel's performance was adequate. *Id.* at 687, 690. In reviewing counsel's performance, a court must determine whether "in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." *Id.* at 690.

The second prong of the *Strickland* test requires a showing of prejudice from the attorney's error. *Id.* at 687. To satisfy this prong, a defendant must show that "there is reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). A reasonable probability is one "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In fact, "a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010) (citing *Roe v. Flores-Ortega*, 528 U.S. 470, 480, 486 (2000)).

### a. Defendant's Claim that Counsel was Ineffective for Failing to Advise Him of Mandatory Deportation

Defendant alleges that counsel's failure to advise him that deportation was a mandatory, rather than a possible, consequence constituted ineffective assistance of counsel. He further claims that counsel's failure to advise him of this mandatory consequence rendered his plea involuntary and unknowing. However, Defendant fails to demonstrate that counsel's advice was deficient.

The Supreme Court recently concluded that "advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel." *Id.* at 1482. Accordingly, when the immigration consequences of pleading guilty are clear, counsel is required to inform his client of those consequences. *Id.* at 1483. However, immigration law can be complex, rendering the consequences of pleading guilty unclear in many situations. *Id.* In those situations, counsel's duty to his client is more limited, and "[a] criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.*

Here, Counsel complied with this requirement, and therefore his performance was not deficient. Counsel initially operated under the belief that Defendant was a U.S. citizen, based on Defendant's representations to him, and so he had no reason or responsibility to advise Defendant of any deportation consequences. In fact, at the time Defendant entered the guilty plea, both counsel and he still believed he was a U.S. citizen. It was not until the presentence investigation occurred that either were alerted to the possibility that Defendant was not a U.S. citizen. However, as soon as counsel became aware of the issue, he carefully explained the different factual scenarios to Defendant and his understanding of the legal consequences of each. (*See* R. 236-2, at 9). He also recommended that Defendant contact a immigration attorney. (*Id*.). Because Defendant's true

citizenship status was unclear, the resulting immigration consequences were also unclear. Therefore, because of this uncertainty, counsel was only required to advise Defendant as to the risk of deportation. *See Padilla*, 130 S. Ct. at 1483; *Strickland*, 466 U.S. at 689 (noting that counsel's performance should be evaluated "from counsel's perspective at the time"). Counsel complied with this obligation. (*See* R. 236-2, at 9) (recognizing that depending on Defendant's mother's citizenship at the time the immigration law took effect, "you may have an immigration problem that will likely affect your citizenship status and could lead to your being deported"). In fact, Defendant's allegation concedes that he was informed that deportation was a potential adverse consequence to his plea.[3] Therefore, counsel's performance was not deficient, and Defendant's ineffective assistance of counsel claim fails. *See United States v. Sanchez-Carmona*, No. 2:09-cr-516-PMP-RJJ, 2010 WL 3894133, at *4 (D. Nev. Sept. 2, 2010) (noting that counsel's decision to inform a defendant that his conviction of a crime may result in deportation did not constitute deficient performance).

Because Defendant cannot establish that counsel rendered ineffective assistance, his assertion that his plea was rendered involuntary or unknowing by his lack of knowledge of mandatory deportation fails as well. As noted above, to successfully attack the validity of the plea, a defendant must demonstrate that counsel's performance fell below the required level of competence. *See Tollett*, 411 U.S. at 267. Therefore, because counsel rendered competent assistance, Defendant's allegation does not affect the validity of the plea or the waiver, and Defendant is bound by the terms of his plea agreement. *See McMann*, 397 U.S. at 774 (concluding that a defendant is bound by the terms of his plea "unless he can allege and prove serious derelictions" by his counsel sufficient to render his plea involuntary).

---

[3]Furthermore, it bears noting that counsel told Defendant, and thus Defendant was aware, that his codefendants would be facing deportation because they were noncitizens and had entered guilty pleas. (*See* R. 242-1, at 2).

### b. Defendant's Claim that Counsel was Ineffective for Failing to Verify his Immigration Status

Defendant next contends that counsel rendered ineffective assistance by failing to verify his citizenship status with the Department of Homeland Security, as he allegedly requested. However, Defendant fails to demonstrate that counsel's alleged failure was deficient, and therefore, he does not establish that counsel rendered ineffective assistance.

On the facts of this case, counsel's failure to verify Defendant's immigration status was not deficient. Defendant repeatedly represented to counsel that he was a United States citizen, and based on these representations, counsel had no reason to question Defendant's citizenship status. (*See* 236-2, at 10) (recognizing that "[p]ursuant to previous conversation and understanding we both labored under the impression that you were a US citizen"). Furthermore, Defendant informed counsel that he had consulted an immigration attorney to confirm his citizenship, and in fact, Defendant had met with an immigration attorney in January 2009, well before he entered his guilty plea in April 2009. Accordingly, it was reasonable for counsel to rely on not only his client's representation that he was a U.S. citizen, but also an immigration attorney's conclusion of the same, without conducting an independent investigation. It would be unreasonable to require counsel to verify the immigration status of every client, even if so requested, when an immigration attorney had already been consulted on the matter. Because counsel's reliance on another attorney's conclusion was reasonable, his failure to independently verify Defendant's status was not deficient. *See Strickland,* 466 U.S. at 688 (recognizing that a "defendant must show that counsel's representation fell below an objective standard of reasonableness" to establish ineffective assistance of counsel). Therefore, because Defendant fails to establish his counsel's ineffectiveness, he cannot demonstrate that his plea or the waiver was involuntary or unintelligent. *See McMann*, 397 U.S. at 774.

### c. Defendant's Claim that Counsel was Ineffective for Advising Him Not to Withdraw his Guilty Plea

Defendant argues that counsel's recommendation that he not withdraw his guilty plea constituted ineffective assistance. However, Defendant fails to establish that counsel's performance was deficient because counsel's advice was reasonable, as demonstrated by the many facts that weighed against withdrawal of the guilty plea. First, Defendant was likely to be convicted if he went to trial based on the overwhelming evidence against him, including the probable testimony of his co-conspirators. (R. 236-2, at 11). Second, from the facts, it appears likely that the prosecutor would have prosecuted Defendant for distribution of a higher drug weight, which would have likely increased his sentence. (*Id*.). Third, Defendant would face the same deportation consequences whether he was found guilty by a jury or pled guilty, and by entering a plea, he would at least serve less time in prison. (*Id.*). Based on this information, counsel's advice that Defendant not withdraw his guilty plea was objectively reasonable and did not fall below the "wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

However, even if counsel's advice were deemed deficient, Defendant fails to satisfy the prejudice prong. As counsel pointed out, there was a strong likelihood that withdrawal of the plea so close to sentencing would not have been permitted. Furthermore, although Defendant asserts that he would have proceeded to trial if he had known the deportation consequences, he does not demonstrate that rejecting the plea initially would have been rational. *See Padilla*, 130 S. Ct. at 1485. The evidence against Defendant was very strong, as he had confessed to his involvement in the conspiracy, cooperated with law enforcement, and at the time he entered the plea, his co-conspirators had already pled guilty and would have likely testified against Defendant at his trial. Also, the United States could have, and probably would have, charged him with distribution of a

higher quantity of drugs if Defendant proceeded to trial instead of pleading guilty. (R. 236-2, at 11).

Accordingly, Defendant's claim that he would have rejected the plea appears irrational, and Defendant fails to satisfy the prejudice prong. *See United States v. Gilbert*, No. 2:03-cr-349-WJM-1, 2010 WL 4134286, at *4 (D.N.J. Oct. 19, 2010) (determining that a petitioner failed to satisfy the prejudice prong of *Strickland* when he had confessed, cooperated with law enforcement, and his co-conspirators would have testified against him). As Defendant fails to establish his ineffective assistance of counsel claim, he fails to show that his plea or the waiver was involuntary or unintelligent. *See McMann*, 397 U.S. at 774.

### d. Defendant's Claim that Counsel Misadvised Him Regarding his Eligibility for the Residential Drug Abuse Treatment Program

Defendant next contends that counsel was ineffective for allegedly misadvising him as to his eligibility for the Residential Drug Abuse Treatment Program. Defendant claims that counsel informed him that he was eligible for this program, but because of his status as a deportable alien, he was not. However, counsel's advice was neither incorrect nor deficient because at the time the advice was given, counsel, as well as Defendant, believed Defendant to be a U.S. citizen. *See Strickland*, 466 U.S. at 689 (noting that counsel's performance should be evaluated "from counsel's perspective at the time").

Furthermore, Defendant fails to establish prejudice. Counsel stated in an affidavit that he advised Defendant that his acceptance into this program would be determined solely by the Bureau of Prisons (BOP) (R. 242-1, at 1), and so Defendant knew there was a chance that he would not be accepted into the program, regardless of his citizenship. Because he knew that there was a possibility he would not participate in the program, he was not prejudiced by his ineligibility due to

his citizenship.[4]  Therefore, Defendant cannot satisfy *Strickland's* prejudice prong, and Defendant's

claims of ineffectiveness and that his plea or the waiver was involuntary or unintelligent fail.

### e.    Defendant's Ineffective Assistance of Counsel Claim Regarding Counsel's Failure to Argue for a Downward Departure

Defendant next claims that counsel was ineffective for failing to argue for a downward

departure for several reasons related to his alien status, including: (1) Defendant's status as a

deportable alien and the fact he would be subject to more severe restrictions in prison due to this

status; (2) the theory of cultural assimilation; and (3) disparate treatment of individuals in a

jurisdiction that does not have a fast-track policy.[5]  (R. 252, at 16-17).  Defendant does not explain

how he was prejudiced by counsel's alleged failures, other than to say that "there is a reasonable

probability that the outcome of the proceeding would have been different." (*Id*. at 17).

Although Defendant's claims are couched as ineffective assistance of counsel claims, they

appear to be an attack on the length of his sentence. *See Smith v. United States*, No. 1:08-cv-428,

2008 WL 2339464, at *2-3 (W.D. Mich. June 4, 2008) (concluding that a defendant's claim that

counsel was ineffective for failing to negotiate a more favorable Sentencing Guideline range was

actually an attack on the sentence and thus barred by the valid waiver contained within his plea

agreement).  Defendant executed a waiver of his right to collaterally attack his sentence (R. 120, at

---

[4]Defendant also asserts that counsel advised him to claim he had a substance abuse problem, regardless of whether he actually had one, so that he could participate in this rehabilitation program and receive time off his sentence.  (R. 252, at 6).  However, this contention is irrelevant because Defendant admitted his substance abuse problem on the record (R. 241, at 8), and for the reasons stated above, he fails to establish prejudice.

[5]Defendant also argues in passing that counsel's ineffective assistance deprived Defendant of his due process rights and the equal protection of the law.  (R. 252, at 18).  However, Defendant fails to identify which rights were allegedly violated and the manner in which the alleged violation occurred.  Therefore, this issue is deemed waived.  *See United States v. Johnson*, 440 F.3d 832, 846 (6th Cir. 2006) (recognizing that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (internal quotation and citation omitted).

¶ 7), and as discussed above, the waiver is valid. However, to the extent that Defendant's claims can be viewed as attacking the validity of the plea and the waiver, his claims fail on the merits.[6]

In order to establish his ineffective assistance of counsel claim, Defendant must demonstrate that there was a valid basis for a downward departure, and counsel's failure to move for it was both deficient and prejudicial. *See United States v. Vasquez-Duarte*, 59 F. App'x 625, 628 (6th Cir. 2003). To depart from the range provided by the Sentencing Guidelines, a court "must find aggravating or mitigating circumstances of a kind or degree not adequately taken into account by the guidelines." *United States v. Lozano-Alvarez*, 226 F. App'x 531, 533 (6th Cir. 2007). Furthermore, "[t]he court must bear in mind the Commission's expectation that departures based on grounds not mentioned in the Guidelines will be highly infrequent." *Id.* (citing *Koon v. United States*, 518 U.S. 81, 96 (1996)).

### i. Deportable Alien Status and Collateral Consequences in Prison

Defendant asserts that counsel was ineffective for failing to argue for a downward departure on the basis that: (1) he was a deportable alien, and (2) he would face more severe restrictions in prison. Defendant asserts that as a deportable alien, he cannot participate in drug rehabilitation programs per BOP policy, and he is not eligible for early release or spending the last part of his sentence in a halfway house. Defendant concludes that because he does not have these options, his confinement is more severe, and counsel should have argued for a sentence reduction or a more favorable plea agreement on this basis.

---

[6]Defendant also briefly argues that the district court erred by not automatically considering these factors. As this claim is one of trial court error, it cannot be construed as attacking the validity of the plea agreement and waiver, and so it is barred by the valid waiver.

The Sixth Circuit has recognized that a circuit split exists as to whether a defendant's status as a deportable alien, and the collateral prison consequences associated with that status, is a proper basis for a downward departure, but it has not taken a position on the issue. *See United States v. Mendez*, 362 F. App'x 484, 488 n.4 (6th Cir. 2010). As the Sixth Circuit has not recognized either of these as a basis for downward departure, counsel's failure to argue a departure on these grounds was not objectively unreasonable and thus not deficient.

Furthermore, as stated above, in order to justify a downward departure, a defendant's circumstances must be different from the usual case. Here, Defendant offers no facts that in any way distinguish his situation from that of other deportable aliens, or from other groups who are also ineligible for certain prison programs. *See United States v. Lopez-Salas*, 266 F.3d 842, 848 (8th Cir. 2001) (rejecting defendants' argument for downward departure based on their status as deportable aliens and the associated negative consequences in prison, concluding that they had failed to differentiate their situation from that of any other deportable alien). Therefore, as Defendant has not provided extraordinary circumstances that take his case "out of the heartland of cases in the Guideline," *Koon*, 518 U.S. at 98, counsel was not ineffective for failing to argue for a downward departure.[7] *Vasquez-Duarte*, 59 F. App'x at 628. Therefore, Defendant fails to demonstrate that his plea or the waiver was involuntary or unintelligent. *See McMann*, 397 U.S. at 774.

## ii. Cultural Assimilation

---

[7]Defendant's reliance on *United States v. Navarro-Diaz*, 420 F.3d 581 (6th Cir. 2005), is misplaced. In that case, the sentencing court justified its imposition of a sentence at the low end of the Sentencing Guidelines on the basis that the defendant, a deportable alien, was ineligible for placement in a halfway house. *Navarro-Diaz*, 420 F.3d at 588. The Sixth Circuit remanded the case based on the sentencing court's statement that if it were able, it would have considered a downward departure in light of the 16-level enhancement resulting from the defendant's previous criminal history. *Id.* Accordingly, the defendant's status as a deportable alien was only a reason to sentence at the low end of the sentencing range, not to depart downward. Therefore, this case does not support Defendant's position.

Defendant's cultural assimilation argument fails for similar reasons. The theory of cultural assimilation has been compared to the "family and community ties" factor, as discussed in U.S.S.G. § 5H1.6. *Vasquez-Duarte*, 59 F. App'x at 627. The Sixth Circuit has not recognized cultural assimilation as a proper basis for a downward departure. *Lozano-Alvarez*, 226 F. App'x at 533. However, even if it were a proper basis, Defendant has again failed to distinguish his circumstances from those in the typical case as required for downward departure, and therefore counsel was not ineffective for failing to make the argument.

Defendant does not explain any way in which his situation is different from any other defendant. His sentencing memorandum reflects he was born in Mexico and was raised in Lexington, Kentucky. (R. 172, at 5). It also states that he maintained a close relationship with his family and was married just before he was arrested. (*Id*. at 5-6). However, these facts are not extraordinary, as many defendants have close relationships with family members at the time they are convicted and sentenced. Furthermore, family ties are generally not a factor courts consider in determining whether to impose a sentence outside the applicable guideline range. *See Vasquez-Duarte*, 59 F. App'x at 627 (recognizing that family ties should not generally be considered and departure on basis of cultural assimilation is only appropriate in "extraordinary circumstances"). Therefore, as no extraordinary circumstances existed to support a departure due to cultural assimilation, counsel was not deficient for not arguing for a departure on this basis. *See id.* at 628.

Moreover, Defendant cannot establish prejudice. Counsel described Defendant's family situation and life in America in the sentencing memorandum. Although he did not use the phrase "cultural assimilation," he argued zealously for a downward departure, or at least a minimum sentence, because of Defendant's age, limited criminal history, family relationships, and his future potential to become a productive member of society. (R. 172, at 9). These facts are those counsel

would have used in support of a cultural assimilation argument. Therefore, Defendant fails to establish that he was prejudiced by counsel's failure to argue for a departure on this basis, and he cannot demonstrate that his plea or the waiver was involuntary or unintelligent. *See McMann*, 397 U.S. at 774.

### iii. Non-Fast-Track Policy Jurisdiction

Finally, Defendant argues that his counsel was ineffective for failing to argue for a downward departure on the theory that he was arrested in a jurisdiction that does not employ a fast-track policy,[8] and thus he received a disparate sentence in violation of 18 U.S.C. § 3553(a)(6). (R. 252, at 17). In essence, he argues that he should have received a downward departure because he was ineligible for a reduction that was available to those aliens convicted of the same crime in a jurisdiction that utilizes a fast-track policy. The Sixth Circuit has specifically rejected this argument, concluding that the need to avoid sentencing disparity was only one factor a court must consider, and because this policy is provided for by Congress, the reason for the differing sentences is not based on disparate treatment but rather on the furtherance of a policy goal. *Hernandez-Fierros*, 453 F.3d at 313-14. As a result, this difference in sentencing is not unwarranted and does not run afoul of 18 U.S.C. § 3553(a)(6). *Id*. Therefore, as the Sixth Circuit has explicitly rejected this argument, counsel was not deficient for failing to argue it.

Furthermore, it is noteworthy that Defendant did, in fact, receive a downward departure. As noted at the sentencing hearing, Defendant's statutory mandatory minimum sentence was ten years, and his guideline range was seventy to eighty-seven months. (R. 241, at 4, 9). However, with

---

[8]Congress has approved the use of "fast-track policies" due to "the large volume of immigration cases presented for prosecution in certain judicial districts." *United States v. Hernandez-Fierros*, 453 F.3d 309, 310 n.4 (6th Cir. 2006) (internal quotation and citation omitted). These policies allow for up to a four-level reduction if the Government files such a motion. *Id*.

application of the safety valve, Defendant actually received a sentence of forty-three months, with a term of supervised release to follow, which was substantially less than both the statutory minimum and the lower end of the range provided under the Sentencing Guidelines. (*Id*. at 12). In light of the fact that Defendant's sentence was well below the range, Defendant cannot establish that he was prejudiced by counsel's failure to make the above arguments for downward departure. Therefore, Defendant's arguments do not affect the validity of the plea or the waiver. *See McMann*, 397 U.S. at 774.

### 2. Defendant's Contention that his Plea was Involuntary Because He Did Not Understand the Charge

Defendant also contends that his plea was involuntary because he did not understand the charge. He claims that neither counsel nor the court explained that he was pleading guilty to an aggravated felony and that this would result in mandatory deportation. He further argues that he was unaware of his rights before he entered the guilty plea.

This argument is unavailing because the Rule 11 colloquy demonstrates that Defendant understood the nature of the charge. During the rearraignment proceeding, Judge Hood recited the relevant count of the indictment, stating that Defendant was charged with knowingly and intentionally distributing five or more kilograms of a substance containing a detectable amount of cocaine in violation of 21 U.S.C. § 841(a)(1), all in violation of 21 U.S.C. § 846. (R. 240, at 13). Defendant acknowledged the facts supporting the indictment as true, and Judge Hood concluded that Defendant was "aware of the nature of the charges and the consequences of the plea." (*Id*. at 16). As "[s]olemn declarations in open court carry a strong presumption of verity," *Blackledge*, 431 U.S. at 74, Defendant's sudden claim that he did not understand the nature of the charge is not persuasive in light of his statements on the record.

Furthermore, the mere fact that Defendant did not know that the crime to which he pled guilty was an aggravated felony does not render his plea involuntary. The classification of "aggravated felony" is relevant only because of the deportation consequence. Accordingly, Defendant's primary complaint is his lack of knowledge that he would be subject to mandatory deportation by pleading guilty, which he argues was a result of counsel's ineffective assistance. However, as thoroughly discussed above, counsel's performance was objectively reasonable and therefore effective. Because counsel was not ineffective, Defendant's plea was not involuntary. *See McMann*, 397 U.S. at 774 (concluding that a defendant is bound by the terms of his plea "unless he can allege and prove serious derelictions" by his counsel sufficient to render his plea involuntary). Therefore, Defendant's claim fails.

### E. Defendant's Motion for Discovery

Defendant also included a Motion for Discovery within his Response to Plaintiff's Motion to Dismiss, which motion was separately docketed by the Clerk. (R. 254, at 37). Defendant specifically requests to depose his counsel, Matthew Malone, for the purpose of determining his "reasons for his failures complained herein." (*Id.* at 38).

Generally, there is no automatic right to discovery in a habeas case. *Johnson v. Mitchell*, 585 F.3d 923, 934 (6th Cir. 2009). Rule 6 of the Rules Governing Habeas Corpus Cases Under Section 2255 provides that a court may authorize discovery for good cause. *See* Rule 6(a). "Good cause exists where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." *Payne v. Bell*, 89 F. Supp. 2d 967, 970 (W.D. Tenn. 2000) (citing *Harris v. Nelson*, 394 U.S. 286, 300 (1969)).

In this case, Defendant fails to demonstrate good cause for the Court to grant discovery. As discussed above, Defendant's motion was capable of being resolved based on the information

contained in the record, thus making the requested deposition unnecessary. Therefore, it is recommended that his Motion for Discovery be **denied as moot**.

### F.    Defendant's Motion for an Evidentiary Hearing and Appointment of Counsel

Defendant also included a Motion for an Evidentiary Hearing and a Motion for Appointment of Counsel within his Response brief, citing Rules 6 and 8 of the Rules Governing Habeas Corpus Cases Under Section 2255. (*See* R. 254, at 37, 38). Rule 6 relates only to discovery in habeas corpus cases, and so it is irrelevant to this motion. Rule 8(c) provides that the court must appoint counsel if an evidentiary hearing is warranted, provided that the movant qualifies for appointed counsel under 18 U.S.C. § 3006A. "An evidentiary hearing is required unless 'the record conclusively shows that the petitioner is entitled to no relief.'" *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999) (quoting *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996)). As demonstrated above, an evidentiary hearing is not required because the record clearly shows that Defendant is not entitled to relief. Therefore, it is recommended that Defendant's request for an evidentiary hearing be **denied as moot**.

Furthermore, because an evidentiary hearing is not required, counsel is not required. The Criminal Justice Act governs appointment of counsel in the context of habeas petitions. Section 3006A(2)(B) provides: "[w]henever the United States magistrate judge or the court determines that the interests of justice so require, representation may be provided for any financially eligible person who . . . is seeking relief under section 2241, 2254, or 2255 of title 28." *See* 18 U.S.C. § 3006A(2)(B). As indicated by the permissive language of the statute, no constitutional right to counsel exists in a habeas proceeding. *See Post v. Bradshaw*, 422 F.3d 419, 423 n.1 (6th Cir. 2005) (recognizing that a petitioner has no right to counsel in a habeas proceeding). Accordingly, the decision to appoint counsel in a habeas proceeding is solely within the discretion of the court, and

counsel should be appointed only if justice so requires. *See United States v. Thornton*, Civ. No. 06-459-DCR, 2007 WL 1741780, at *1, n.1 (E.D. Ky. May 25, 2007).

Defendant has already filed a pro se Petition in this Court and has not presented any unusual complexities, problems, or conflicts requiring appointment of counsel. Because Petitioner has failed to demonstrate that justice requires appointment of counsel, and the Court recommends dismissal of the Petition on the merits, it is recommended that this motion be **denied as moot**.

## IV.    CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Federal Rules Governing Section 2255 Proceedings, effective December 1, 2009, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. A certificate may issue only if a defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (addressing issuance of a certificate of appealability in the context of a habeas petition filed under 28 U.S.C. § 2254, which legal reasoning applies with equal force to motions to vacate brought pursuant to 28 U.S.C. § 2255). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of the Defendant's § 2255 motion or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it is recommended that a certificate of appealability be **denied** upon the District Court's entry of its final order in this matter.

## V.   CONCLUSION AND RECOMMENDATION

Based on the above analysis, **IT IS RECOMMENDED** that:

(1)   The United States' Motion to Dismiss (R. 242) be **granted;**

(2)   Defendant's Motion to Vacate, Set Aside, or Correct a Sentence Pursuant to 28 U.S.C. § 2255 (R. 236) be **denied;**

(3)   Defendant's Motion for Discovery (R. 254) be **denied as moot**;

(4)   Defendant's Motion for an Evidentiary Hearing (R. 254) be **denied as moot**;

(5)   Defendant's Motion for Appointment of Counsel (R. 254) be **denied as moot**;

(6)   A Certificate of Appealability be **denied** by the District Court in conjunction with the Court's entry of its final order in this matter; and,

(7)   This action be **stricken** from the active docket of the Court.

Objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of the same or further appeal is waived. *See* Fed. R. Civ. P. 72(b)(2); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Poorly drafted objections, general objections or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *See Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof.  Rule Fed. R. Civ. P. 72(b).

This 16th day of March, 2011.



**Signed By:**

*__Candace J. Smith__*

**United States Magistrate Judge**

G:\DATA\habeas petitions\waiverinPleaAgreementR&Rs\08-226 Lopez R&R.wpd